**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| *In re* SUBPOENA TO PERRONG LAW LLC | Misc. No. 2:26-mc-88 |
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DABELLA EXTERIORS LLC,<br><br>Defendant. | Underlying action:<br><br>United States District Court for the District of Oregon, Portland Division<br><br>Case No. 3:25-cv-00396-SI |

**NON-PARTY PERRONG LAW LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA, FOR A PROTECTIVE ORDER, AND TO STAY COMPLIANCE**

Non-Party Perrong Law LLC ("Perrong Law" or the "Firm") moves under Federal Rule of Civil Procedure 45(d)(3) to stay and quash the subpoena that Defendant DaBella Exteriors LLC ("DaBella") emailed to the Firm on September 17, 2026 (the "Subpoena"). In particular, the Firm requests that the Court (i) stay any obligation to comply with the Subpoena pending decision of this Motion, (ii) hold that the Firm has no obligation to respond unless and until the Subpoena is properly served, and (iii) quash the Subpoena. This Court is the proper court to decide this Motion because the Firm is located in this District and the Subpoena designates no lawful place of compliance anywhere else. Fed. R. Civ. P. 45(c)(2)(A), (d)(3)(A).

## PRELIMINARY STATEMENT

DaBella has aimed a Rule 45 subpoena at the law firm that is suing it. The Subpoena seeks material the Firm does not have, about an event that is not part of the case, and DaBella never served it. This is improper, and the Subpoena must be quashed.

The underlying action is a consumer case against DaBella, not a case about Plaintiff's lawyers. Plaintiff Leon Weingrad alleges that DaBella violated the Do Not Call provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), by placing telemarketing calls and text message calls to his telephone number, which is registered on the National Do Not Call Registry, and by continuing to call after he told DaBella to stop. The contested merits issues are narrow, whether DaBella made the calls, whether the number was registered on the DNC, and whether DaBella had consent, which DaBella claims to have obtained through an online "opt-in" submitted under someone else's name. Perrong Law is Plaintiff's counsel of record.

The Subpoena asks about none of that. Its three requests seek (1) "[t]he video taken by Mr. Perrong" of a visit DaBella's goons made to Plaintiff's home on October 20, 2025, more than seven months after Plaintiff sued DaBella; (2) any other video or photographs of that visit;

and (3) "[a]ny and all non-privileged evidence regarding any allegation of violence or threatened violence by DaBella" that day. A door-to-door visit is not a telephone call. Nothing about it bears on whether DaBella placed the calls at issue, whether it had consent, or whether it honored Plaintiff's Do Not Call request, or any fact of concequence in the litigation.

The Subpoena is also aimed at the wrong target. DaBella's own Request No. 1 identifies the video it wants as one "taken by Mr. Perrong." The Firm did not create, commission, receive, or hold any recording of the October 20 visit. No such recording exists in the Firm's files, systems, or accounts, or is held by anyone in a Firm capacity. Any recording Mr. Perrong made, he made and holds personally, and it has nothing to do with the Firm's representation of Plaintiff. Plaintiff, for his part, has already told DaBella in party discovery that he has no such materials. In this Circuit, an entity controls only what it has a legal right to obtain on demand, and a limited liability company has no legal right to its members' personal property. DaBella therefore knew when it issued the Subpoena that what it wanted was not the Firm's, and it subpoenaed the law firm anyway.

More fundamentally, courts disfavor and heavily scrutinize discovery aimed at a party's counsel, and for good reason. Discovery directed at an adversary's lawyers is presumptively burdensome, threatens privilege and work product, and chills the free and candid exchange between attorneys and clients on which the adversarial system depends. Those harms flow from the act of targeting counsel itself, regardless of what the discovery seeks. Courts in this District therefore apply the three-part *Shelton* test and require the requesting party to show that the information is unavailable from other sources, relevant and nonprivileged, and crucial to the preparation of the case. DaBella cannot satisfy any of those requirements. The most obvious source of information about what DaBella's representatives did at Plaintiff's door is DaBella,

which sent them there, and the representatives themselves. The information is irrelevant to the TCPA claims. And nothing in the case turns on it.

Nor may DaBella use a subpoena to manufacture a lawyer-witness problem where none exists. Cases permitting discovery from counsel who was an “actor or viewer” involve counsel who witnessed the *transaction giving rise to the claims*, and even then require a showing that counsel knows something the actual witnesses do not. Counsel’s incidental presence at a collateral episode, one that DaBella itself initiated by continuing to harass a represented plaintiff at his home after suit, does not make counsel a necessary witness to anything. A defendant that keeps contacting a plaintiff after being sued cannot convert its own conduct into a basis for subpoenaing, deposing, or disqualifying that plaintiff’s lawyer.

The Subpoena also fails at the threshold. DaBella emailed it to opposing counsel’s email, which courts in this Circuit uniformly hold is not service under Rule 45(b)(1). DaBella confirmed as much by later sending a process server, who never delivered it. And the Subpoena designates no lawful place of compliance. An email address is not a “place” under Rule 45, and the only physical locations the Subpoena identifies, Portland, Oregon and Jupiter, Florida, are each far more than 100 miles from where the Firm resides, is employed, or regularly transacts business in person.

The presiding judge in the underlying action has already rejected DaBella’s overreaching third-party subpoena practice. Earlier this year, DaBella subpoenaed Plaintiff’s employer for, among other things, seventeen months of Plaintiff’s internet activity, video footage of him working, his timesheets, and all of his communications about telemarketing and his TCPA lawsuits. The court enforced only three requests tied to the disputed February 6, 2025 opt-in and quashed the rest. It held that DaBella’s broader requests “tip[] too far into harassment” and were

"an improper fishing expedition." *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-cv-396-SI, ECF No. 77 at 6 (D. Or. June 23, 2026). A subpoena aimed at Plaintiff's lawyers, about an event that is not part of the claims at all, is improper *a fortiori* for parallel reasons.

For these reasons, as detailed below, the Court should stay compliance, hold that the Firm has no obligation to respond absent proper service, and quash the Subpoena in full.

## BACKGROUND

### A. The Underlying TCPA Action

Plaintiff has an Oregon telephone number. DaBella sells home-improvement products and services, including windows in Oregon, and called Plaintiff's Oregon number. Plaintiff sued DaBella in the District of Oregon, individually and on behalf of putative classes, under the TCPA's Do Not Call provisions, 47 U.S.C. § 227(c), and its implementing regulations, 47 C.F.R. § 64.1200(c)(2), (d). *Weingrad v. DaBella Exteriors LLC*, No. 3:25-cv-00396-SI (D. Or.). Plaintiff alleges that, beginning on February 6, 2025, DaBella sent him unsolicited marketing text message calls and voice calls to his number, which is registered on the National Do Not Call Registry, that he told DaBella he was not interested, and that DaBella called again on September 11, 2025, after he had filed suit.The disputed merits issues therefore concern telephone calls, the Do Not Call Registry, and whether DaBella had consent to call.

None concerns an in-person visit.

Perrong Law, through Andrew Roman Perrong, is Plaintiff's counsel of record. Declaration of Andrew Roman Perrong ("Perrong Decl.") ¶ 2.

### B. The Presiding Judge Has Already Rejected DaBella's Overbroad Third-Party Subpoena Practice

This is not DaBella's first attempt to use Rule 45 to reach beyond the claims. In May 2026, DaBella subpoenaed Plaintiff's employer, Toyota of Portland, for eight categories of

material. They included Plaintiff's website activity from January 1, 2024 to the present, all video of Plaintiff on Toyota's premises on February 6, 2025, and all of Plaintiff's communications regarding the TCPA, telemarketing calls, his TCPA lawsuits, or profits from telemarketing calls, among other requests. *Weingrad*, ECF No. 77 at 3. Plaintiff moved to quash.

The court granted the motion in large part. It modified the subpoena to require Plaintiff's employer produce only three categories of documents tied to the disputed February 6, 2025 opt-in: the websites Plaintiff visited that day, any VPN or similar application he used that day, and the IP addresses he used that day. *Id.* at 6. The court quashed "the subpoena in all other requests." *Id.* It explained that DaBella's demand for seventeen months of Plaintiff's computer use, video footage, and communications "tips too far into harassment," and that "[a]dditionally, it is an improper fishing expedition." *Id.*

### C. The Subpoena

On September 17, 2026, DaBella issued the Subpoena. Perrong Decl. ¶ 6 & Ex. A. It is addressed to "Andrew Perrong, Esq., Perrong Law LLC" at the Firm's office in Yardley, Pennsylvania. *Id.* Ex. A at 1. It commands production by 10:00 a.m. on October 2, 2026, "[v]ia email electronically to the undersinged [*sic*] counsel, or at the undersigned counsel's address indicated below," which identifies DaBella's counsel in Portland, Oregon and Jupiter, Florida. *Id.* The Subpoena designates no place of compliance in Pennsylvania. Schedule A contains three requests:

> **Request No. 1**: The video taken by Mr. Perrong concerning the alleged visit by DaBella to Leon Weingrad's property on October 20, 2025.
>
> **Request No. 2**: Any and all other videos or photographs of the alleged visit by DaBella to, Leon Weingrad's property on October 20, 2025.

> **Request No. 3**: Any and all non-privileged evidence regarding any allegation of violence or threatened violence by DaBella on October 20, 2025.

*Id.* Ex. A, Schedule A. The Subpoena's instructions direct the recipient "to search for *and testify about*" information, "including data that exist on your computers' hard drives, on computer servers to which you have access, in email accounts, in text messaging accounts, and all other places in which responsive electronic data may be stored," and to produce electronically stored information "in its original format complete with all metadata." *Id.*, Instrs. 1-2. It defines "you" to mean "Andrew Perrong, Esquire and/or Perrong Law LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees." *Id.*, Defs. 2.

### D. DaBella Never Served the Subpoena

DaBella did not serve the Subpoena. On September 17, 2026, its counsel emailed a copy to Mr. Perrong's firm email address. Perrong Decl. ¶ 6. Neither the Firm nor Mr. Perrong has ever agreed to accept service of a Rule 45 subpoena by email. *Id.* ¶ 7. DaBella then sent a process server to the Firm's Yardley office on one occasion while Mr. Perrong was out of the office. *Id.* ¶ 8. No copy of the Subpoena has been delivered to Mr. Perrong or to anyone authorized to accept service on the Firm's behalf. *Id.*

### E. The Firm Has No Responsive Materials

The Firm is a Pennsylvania restricted professional limited liability company whose primary office is in Yardley, Pennsylvania and a transitionary office in Glenside, Pennsylvania. Perrong Decl. ¶ 3. It has no office in Oregon or Florida, is not registered or qualified to do business in either State, and does not regularly transact business in person in either. *Id.* ¶¶ 3-4.

The Firm does not possess, have custody of, or control any video, photograph, or other material depicting the October 20, 2025 visit. *Id.* ¶ 9. The Firm did not create, commission, or

receive any such recording. None is maintained in the Firm's files, systems, or accounts, and none is held by anyone in a Firm capacity. *Id.* Any recording Mr. Perrong made was made in his personal capacity, not at the direction of the Firm or any client and not for purposes of the representation or this litigation, and he holds it personally. *Id.* ¶ 10. Plaintiff likewise has represented in response to DaBella's party discovery that he has no such materials in his possession, custody, or control.

## LEGAL STANDARD

Rule 45 protects non-parties from abusive process. On a timely motion, "the court for the district where compliance is required must quash or modify a subpoena that," among other things, "requires a person to comply beyond the geographical limits specified in Rule 45(c)," "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(ii)-(iv). A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must enforce this duty." Fed. R. Civ. P. 45(d)(1). In applying Rule 45, courts "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (quoting *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017)).

The scope of any subpoena is bound by Rule 26. A subpoena may reach only nonprivileged matter "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Weingrad*, ECF No. 77 at 2 (Rule 45 subpoenas "must meet the same requirements applicable to any discovery" under Rule 26(b)) (cleaned up). The court must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). And the burden imposed on a

non-party "is a factor entitled to special weight in evaluating the balance of competing needs." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).[1]

Discovery directed at a party's counsel draws heightened scrutiny. Although the Third Circuit has not formally adopted it, courts in this District apply the three-part test of *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), which permits discovery from opposing counsel only where (1) no other means exist to obtain the information, (2) the information is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. *United States v. Kindred Healthcare, Inc.*, No. CV 16-00683-KSM, 2024 WL 5410444, at *6 (E.D. Pa. Nov. 13, 2024) ("[C]ourts in the Third Circuit Court of Appeals have applied the test set forth in *Shelton*."); *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, No. 15-CV-5929, 2017 WL 3116284, at *2 (E.D. Pa. July 21, 2017); *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385 (E.D. Pa. 2006).

Courts in the Third Circuit are wary of the "harassing practice" of discovery devices propounded against opposing counsel, especially when it "appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Patrick v. Equifax Info. Servs., LLC*, No. CV 23-4092 (CPO)(EAP), 2024 WL 4404187, at *8 (D.N.J. Oct. 3, 2024) (quoting *Johnston Dev. Grp., Inc. v. Carpenters Loc. Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990) and in turn quoting *Shelton*). Put differently, "when seeking to depose

[1]The Firm seeks protective relief under this Court's authority to quash or modify the Subpoena under Rule 45(d)(3). To the extent Rule 26(c)(1) would direct a standalone protective order request to the court where the action is pending, the Firm requests the same relief in the alternative under Rule 45(d)(3).

opposing counsel, the cards are stacked against the requesting party from the outset and they must prove the deposition's necessity." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009).

## ARGUMENT

### I. THE COURT SHOULD STAY COMPLIANCE PENDING DECISION OF THIS MOTION

The Subpoena states a compliance deadline of 10:00 a.m. on October 2, 2026. The Firm has moved before that deadline, and the Court should stay any obligation to comply until this Motion is decided. As shown below, the Subpoena was never served, designates no lawful place of compliance, seeks material the Firm does not have, and targets opposing counsel for irrelevant discovery. *See infra* Sections II-VI. DaBella will suffer no prejudice from a stay. The Subpoena concerns a collateral event outside the claims, and the underlying schedule will permit resolution of this motion well before any relevant deadline. In similar circumstances, may stay compliance until a motion to quash is briefed and decided. *See Hone v. Wal-Mart, Inc.*, No. 14CV1006FLWDEA, 2017 WL 3401269, at *3 (D.N.J. Aug. 8, 2017); *Maximum Hum. Performance, LLC v. Sigma-Tau HealthScience, LLC*, No. 12-CV-6526-ES-SCM, 2013 WL 4537790, at *3 (D.N.J. Aug. 27, 2013). This Court should do the same.

### II. THE SUBPOENA IS UNENFORCEABLE ON ITS FACE

#### A. DaBella Never Served the Subpoena

"Serving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Courts within the Third Circuit read "delivering" literally to require personal service. *Hamilton v. Radnor Twp.*, 662 F. Supp. 3d 536, 541 (E.D. Pa. 2023) (third party subpoena requires personal service absent exceptional circumstances); *Farley-Skinner v. Adventure*

*Aquarium, LLC*, No. 117CV04797RBKKMW, 2018 WL 3647209, at *1 (D.N.J. Aug. 1, 2018); *CMI Roadbuilding, Inc. v. Dritto Techs., Inc.*, No. CV2002911MASTJB, 2020 WL 5571743, at *1 (D.N.J. Sept. 17, 2020) (Federal Express insufficient). Ninth Circuit courts hold likewise. *SiteLock, LLC v. GoDaddy.com, LLC*, 338 F.R.D. 146, 153 (D. Or. 2021). And a recipient's knowledge of a subpoena does not cure defective service. *Farley-Skinner*, 2018 WL 3647209, at *2.

DaBella simply emailed the Subpoena to the email of its adversary's counsel. Perrong Decl. ¶ 6. That is not service. It was neither personal delivery nor authorized by any court. The Firm never consented to accept Rule 45 subpoenas by email. *Id.* ¶ 7. Rule 45 carries its own service requirement precisely because a subpoena carries the threat of contempt, which may be imposed only on a person who, "having been served," fails to obey. Fed. R. Civ. P. 45(g); *see In re Rosen*, 542 B.R. 177, 179 (Bankr. E.D. Pa. 2015) (proper service is a prerequisite to contempt). DaBella's own conduct confirms the point. After emailing the Subpoena, DaBella dispatched a process server to the Firm's Yardley office. A party that believed email service was complete would not have done so. And, to date, that process server has not delivered the Subpoena to Mr. Perrong or to anyone authorized to accept service for the Firm. *Id.*

The Firm brings this Motion before the Subpoena's stated compliance date only to foreclose any argument that it waived its objections. It does not concede that service occurred. The Court should hold that the Firm has no obligation to respond to the Subpoena unless and until it is served as Rule 45(b)(1) requires, and that any period under Rule 45(d)(2)(B) runs only from proper service.

### B. The Subpoena Designates No Lawful Place of Compliance

A subpoena may command production only "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). The subpoena must specify that place, Fed. R. Civ. P. 45(a)(1)(A)(iii), and "that place must be selected under Rule 45(c)," Fed. R. Civ. P. 45(c) advisory committee's note to 2013 amendment. The court "must quash or modify" a subpoena that requires compliance beyond those limits. Fed. R. Civ. P. 45(d)(3)(A)(ii).

The Subpoena is directed to the Firm. It names "Andrew Perrong, Esq., Perrong Law LLC" at the Firm's office address, identifying Mr. Perrong as the Firm principal to whom it is addressed. Perrong Decl. Ex. A at 1. Its definition of "you" as "Andrew Perrong, Esquire and/or Perrong Law LLC" only compounds the ambiguity, which DaBella as drafter must bear. *Id.*, Schedule A, Defs. 2.[2] The Firm resides, is employed, and transacts business only in this District. It is a Pennsylvania restricted professional limited liability company whose office is in Yardley, Pennsylvania. Perrong Decl. ¶ 3. It has no office in Oregon or Florida, is not registered or qualified to do business in either State, and does not regularly transact business in person in either. *Id.* ¶¶ 3-4. Its principal, Mr. Perrong, resides within 100 miles of this Courthouse. *Id.* ¶ 5.

Measured against those facts, the Subpoena designates no lawful place of compliance. The only physical locations it identifies are DaBella's counsel's offices in Jupiter, Florida, more than 900 miles from Yardley, and Portland, Oregon, more than 2,300 miles away. Both exceed Rule 45(c)'s limit many times over. The Subpoena's email option does not fill the gap, because an email address is not a "place" of compliance. The place of compliance must be a physical

---

[2] Even if DaBella intended to subpoena Mr. Perrong individually, it never personally served him, *see supra* Section II.A, and any such subpoena would fail for the reasons set out in Sections IV through VI.

location subject to Rule 45(c)'s geographic limits, even though the parties may agree to transmit documents electronically. *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 711 (N.D. Tex. 2017); *Frobe v. UPMC St. Margaret*, 2021 WL 9628848, at *1 (W.D. Pa. July 13, 2021) ("Zoom Videoconferencing is not a place."); *Morris Bart, L.L.C. v. MMA L. Firm, P.L.L.C.*, No. MC 25-2301, 2025 WL 3649523, at *4 (E.D. La. Dec. 17, 2025). A subpoena whose only places of compliance are beyond Rule 45(c)'s limits must be quashed. Fed. R. Civ. P. 45(d)(3)(A)(ii).

This Court is the proper court to so hold. Where a subpoena does not lawfully designate a place of compliance, courts look to where the subpoenaed non-party is located. *See Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629-30 (C.D. Cal. 2018) (compliance district is where the subpoenaed non-party's custodians are located and transact business); *York Holding, Ltd. v. Waid*, 345 F.R.D. 626, 630 (D. Nev. 2024) ("[T]he place of compliance for the purpose of filing a motion to quash a subpoena seeking documents from a nonparty is the place where that nonparty is located."); *see also CSS*, 354 F. Supp. 3d at 711 (where a subpoena lists only an email address, the most plausible compliance district is where the subpoenaed person works or resides). Any lawful place of compliance for the Firm would lie within 100 miles of Yardley. Rule 45 does not require a Pennsylvania non-party to litigate in a forum thousands of miles away merely because the issuing party designated a place of compliance the Rule forbids.

## III. THE SUBPOENA IS AIMED AT THE WRONG TARGET BECAUSE THE FIRM DOES NOT POSSESS, HAVE CUSTODY OF, OR CONTROL WHAT DABELLA SEEKS

Even setting aside service and geography, the Subpoena is simply wrong. A subpoena may command a person to produce only documents and things "in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). In this Circuit, control means "the legal right to obtain the documents required on demand." *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d

131, 140 (3d Cir. 1988); *accord Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). An entity cannot be held accountable for failing to produce materials unless it has a legally enforceable right to secure them or its separate existence may be disregarded under *alter ego* principles of corporate veil-piercing. *Gerling*, 839 F.2d at 140-41. The party seeking production bears the burden of establishing control. *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991). And a recipient's lack of possession or legal control over the materials a subpoena demands is a valid defense and a basis to quash. *In re Grand Jury*, 705 F.3d 133, 138 (3d Cir. 2012).

The Firm has nothing to produce. It did not create, commission, or receive any recording of the October 20, 2025 visit. Perrong Decl. ¶ 9. No such recording is maintained in the Firm's files, systems, or accounts, or held by anyone in a Firm capacity. *Id.* Any recording Mr. Perrong made, he made in his personal capacity, not at the direction of the Firm or any client and not for purposes of the representation or this litigation, and he holds it personally. *Id.* ¶ 10.

Material held by an individual in a personal capacity is not the entity's. *Gerling* applied that principle to a corporate president in holding that information the president held "in connection with a matter in which he was acting for himself rather than the corporation" was not attributable to the corporation absent *alter ego* or closely analogous circumstances. 839 F.2d at 138-39 (citing *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 427 F.2d 862, 869 (4th Cir. 1970)).

The same is true of a limited liability company and its members. Pennsylvania law gives an LLC no right to demand its members' personal property. A member's statutory duties run to the company only in the conduct of the company's activities and affairs, 15 Pa. C.S. § 8849.1, and the statute's information rights run from the company to its members, not the reverse, 15 Pa.

C.S. § 8850. "The corporate form was created to allow shareholders to invest without incurring personal liability for the acts of the corporation." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). "[T]he appropriate occasion for disregarding the corporate existence occurs when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime" and "the court may only pierce the veil in 'specific, unusual circumstances', lest it render the theory of limited liability useless." *Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania*, 736 F.2d 879, 886 (3d Cir. 1984) (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967)). DaBella cannot show that the Firm has any legal right to obtain a recording its member made and holds personally, and DaBella makes no *alter ego* claim.

DaBella knew all of this when it issued the Subpoena. Its own Request No. 1 describes the video it wants as one "taken by Mr. Perrong," not by or for the Firm. Perrong Decl. Ex. A, Schedule A, Req. 1. And Plaintiff had already told DaBella, in response to party discovery, that he has no such materials. *Id.* ¶ 11. DaBella thus subpoenaed the one entity it had no reason to believe held what it wanted, the law firm litigating against it. A personal recording does not become a law firm record because the person who made it happens to be a lawyer and a member of the firm. DaBella's contrary theory would make every personal photograph and video on every lawyer's phone discoverable by a subpoena to the lawyer's firm, magnifying exactly the intrusion into counsel's affairs that courts guard against. *See infra* Section IV.

A subpoena that commands a person to produce what it does not have serves no legitimate purpose and imposes burden for its own sake. It should be quashed. Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv). If DaBella wishes to seek discovery from an individual, it must name and

properly serve that individual, who would be entitled to raise his own objections, including those set out below, which apply with full force.

## IV. A SUBPOENA DIRECTED AT PLAINTIFF'S COUNSEL IS PRESUMPTIVELY IMPROPER, REGARDLESS OF WHAT IT SEEKS

### A. Courts in This District Disfavor Discovery From Opposing Counsel Because It Chills the Attorney-Client Relationship and Disrupts the Adversarial Process

The *Shelton* rule exists to stop exactly what DaBella is attempting. It was designed to guard against the practice of taking discovery from opposing counsel, which prolongs and increases the cost of litigation, demeans the profession, and constitutes an abuse of the discovery process. *Shelton*, 805 F.2d at 1327, 1330. Its protection is at its strongest where, as here, the discovery targets counsel in a pending case. *See Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002) (*Shelton* was intended "to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy"). Courts in this District apply *Shelton* and deny discovery from opposing counsel where the requesting party cannot carry its burden. *E.g.*, *Kindred Healthcare*, 2024 WL 5410444, at *6-*7 (denying deposition of opposing trial counsel); *Stavropolskiy*, 2017 WL 3116284, at *3 (denying deposition of outside counsel where other means had supplied the information); *Patrick*, 2024 WL 4404187, at *8.

Courts elsewhere have described the harms in similar terms. They "presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise." *Coleman v. District of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012). Even discovery "limited to relevant and non-privileged information" may "disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Sterne Kessler Goldstein & Fox,*

*PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-81 (D.D.C. 2011). "[E]ven a [limited] deposition of counsel . . . risks disrupting the attorney-client relationship." *Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.*, 255 F.R.D. 340, 344 (W.D.N.Y. 2009) (quoting *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002)). And harassing discovery propounded on opposing counsel "lower[s] the standards of the profession." *Wilson v. Scruggs*, No. 3:02-cv-525, 2003 WL 23521358, at *1 (S.D. Miss. Apr. 10, 2003).

These concerns do not depend on the form of the discovery or its subject matter. They arise from the act of turning litigation counsel into a target of discovery. A subpoena to an adversary's lawyers forces counsel to divert attention from the client's case to the lawyer's own response. It sets counsel's personal interests against the client's. It raises the specter that counsel will become a witness. And it signals to every litigant that retaining counsel invites discovery into the lawyer. Courts in this Circuit have recognized that even discovery framed as seeking "only factual information" from counsel may inevitably invade protected work product. *See SEC v. Princeton Alt. Funding, LLC*, No. 21-cv-12971, 2025 WL 50377, at *8 (D.N.J. Jan. 8, 2025).

For the same reasons, courts quash document subpoenas served on law firms that seek irrelevant, privileged, or burdensome material, or material available from other sources. *Owen v. Audubon Field Sols., LLC*, No. 25-MC-00070, 2026 WL 459255, at *3 (E.D. Pa. Feb. 18, 2026) (quashing because information was available from other sources); *Kegerise v. Susquehanna Twp. Sch. Dist.*, No. 1:CV-14-0747, 2016 WL 2736048, at *1 (M.D. Pa. May 11, 2016) (quashing because information was irrelevant); *Winston & Strawn LLP v. Janssen Prods., L.P.*, No. CV225061GCRLS, 2022 WL 3588106, at *1 (D.N.J. Aug. 22, 2022) (quashing subpoena relating to counsel's document collection efforts); *In re TQ Delta*, No. CV 17-MC-328-RGA, 2018 WL 5033756, at *3 (D. Del. Oct. 17, 2018) (public information); *Kull v. Arrowood Indem.*

*Co.*, No. CIV.A. 13-4343 FLW, 2013 WL 5603924, at *5 (D.N.J. Oct. 11, 2013) (several reasons).

### B. The "Actor or Viewer" Cases Do Not Help DaBella

DaBella may invoke the line of cases permitting discovery from an attorney who was an "actor or viewer" in the events at issue. *See Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990); *In re Tutu Water Wells Contamination*, 184 F.R.D. 266, 267 (D.V.I. 1999). Those cases do not apply here, for two reasons.

*First*, they concern counsel who witnessed or participated in the transaction or occurrence giving rise to the claims or defenses, such as the meetings or the settlement agreement on which the case turned. *See Johnston*, 130 F.R.D. at 353-54; *Tutu Water Wells*, 184 F.R.D. at 267. The October 20, 2025 visit is not that, even if it was witnessed by Mr. Perrong. Plaintiff's claims arise from telephone calls and text messages beginning in February 2025. A visit to Plaintiff's house seven months after suit gives rise to no claim and supports no defense. Counsel's incidental presence at a collateral episode does not open counsel to discovery.

*Second*, even where an attorney witnessed relevant events, courts in this District deny discovery from counsel unless the requesting party shows that counsel possesses factual information unavailable from the actual witnesses. *Fried v. Sungard Recovery Servs.*, 164 F.R.D. 405, 406 (E.D. Pa. 1996) (denying deposition of plaintiff's counsel where defendant failed to make that showing). DaBella cannot make it. The actual witnesses to the October 20 visit include DaBella's own representatives, the people DaBella sent to Plaintiff's door, and the police who attended the scene, who memorialized the incident in a report.

### C. DaBella Cannot Satisfy Any of the *Shelton* Requirements

Considering each of the three *Shelton* factors shows that the subpoena should be quashed.

*First*, whatever information exists about the October 20 visit is available from more convenient sources, beginning with DaBella itself. DaBella sent the representatives who went to Plaintiff's home. It can ask them what happened, review its own dispatch and appointment records, and request any public police records concerning the visit. Plaintiff, a party, is subject to party discovery, and DaBella has already used it to seek these very materials. Perrong Decl. ¶ 11. Where another source has supplied or can supply the information, discovery from counsel is unwarranted. *Stavropolskiy*, 2017 WL 3116284, at *2-*3; *Fried*, 164 F.R.D. at 406; *see* Fed. R. Civ. P. 26(b)(2)(C)(i). DaBella may not bypass those sources straight to opposing counsel.

*Second*, the information is irrelevant to any claim or defense. *See infra* Section V.

*Third*, the information is not crucial to the preparation of the case. Nothing in the TCPA claims or DaBella's consent defense turns on what happened at Plaintiff's door in October 2025. A collateral event that bears on no element of any claim cannot be "crucial" to anything. *See Linerboard*, 237 F.R.D. at 384 (quashing deposition where requesting party failed to show information was crucial).

*Finally*, the Subpoena threatens privilege and work product. To the extent the Firm holds anything at all touching the October 20 events, it holds it only as Plaintiff's litigation counsel, in the form of communications with its client and its own work product. A nonparty responding to a subpoena need not produce documents protected by attorney-client privilege. *Fed. Trade Comm'n v. Abbvie, Inc.*, No. CV 14-5151, 2015 WL 8623076, at *7 (E.D. Pa. Dec. 14, 2015); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). Nor may DaBella obtain counsel's work product absent a showing of substantial need it cannot make. Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003).

### D. DaBella Cannot Use a Subpoena to Manufacture a Lawyer-Witness

The Subpoena's evident design is to recast Plaintiff's counsel as a fact witness to a collateral episode. That effort fails, and the Court should not permit Rule 45 to be used to lay its foundation.

The lawyer-witness rule is narrow. It bars a lawyer from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness," and even then not where the testimony "relates to an uncontested issue" or disqualification "would work substantial hardship on the client." Pa. R. Prof'l Conduct 3.7(a). By its terms, the rule governs advocacy at trial. It does not bar counsel from pretrial activity. *Caplan v. Braverman*, 876 F. Supp. 710, 711 (E.D. Pa. 1995); *Javorski v. Nationwide Mut. Ins. Co.*, No. CIVA 3:06CV1071, 2006 WL 3242112, at *9 (M.D. Pa. Nov. 6, 2006). A party invoking it must show, by reference to the record, that the lawyer's testimony will be necessary and not merely cumulative. *Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F. Supp. 96, 100 (D. Del. 1987). Disqualification is a drastic measure, *see Univ. Patents, Inc. v. Kligman*, 737 F. Supp. 325, 329 (E.D. Pa. 1990) (refusing to disqualify attorney who had *ex parte* contact with a party's employees).

Mr. Perrong is not a necessary witness to anything in this case. The October 20 visit is not an element of any claim or defense. *See infra* Section V. Even if it were, others with personal knowledge are available, most obviously the DaBella representatives who made the visit, along with Plaintiff and any responding officers. *See* Fed. R. Evid. 602. This is the opposite of the "rare case" in which counsel was found necessary because counsel was the only witness who could give the client's account of a conversation central to the claim. *Compare Freeman v. Vicchiarelli*, 827 F. Supp. 300, 303-04 (D.N.J. 1993). Testimony that would be cumulative of other available witnesses on a collateral matter is the antithesis of "necessary."

Lawyers who litigate TCPA cases routinely encounter defendants' telemarketers and sales agents, because defendants often continue to solicit plaintiffs after being sued, sometimes when in their presence or while counsel is readily available. DaBella did exactly that here, by continuing to contact Plaintiff on a telephone call not involving his counsel on September 11, 2025, and, as the Subpoena itself reflects, at Plaintiff's home in October 2025, while Plaintiff's counsel was present in the area. A defendant cannot, by continuing to solicit a represented plaintiff, generate a basis to subpoena, depose, or disqualify the plaintiff's lawyer.

Whatever DaBella's purpose, whether to investigate a collateral episode or to develop some theory about Plaintiff's counsel, Rule 45 is not the vehicle for it.

## V. THE SUBPOENA SEEKS IRRELEVANT AND DISPROPORTIONATE DISCOVERY

### A. The October 20 Visit Has No Bearing on Any Claim or Defense

Plaintiff's claims arise under 47 U.S.C. § 227(c) and its implementing regulations, which govern *telephone solicitations* to numbers on the National Do Not Call Registry and require sellers to honor Do Not Call requests. *See* 47 C.F.R. § 64.1200(c)(2), (d). The elements concern *telephone calls* and text message calls: whether DaBella made them, whether the number was registered, how many calls occurred, and whether DaBella had consent or an established business relationship. DaBella's defenses, on which it has already moved for both summary judgment and to deny class certification, concern the same calls.

An in-person visit to Plaintiff's home on October 20, 2025, more than seven months after suit was filed, is not a telephone call or a "telephone solicitation." It does not bear on whether DaBella had consent to call in February 2025. Whatever DaBella's representatives did or did not do on Plaintiff's doorstep, it will not make any fact of consequence to the TCPA claims more or less probable. Courts decline to enforce subpoenas, including subpoenas to law firms, that seek

documents not relevant to the claims or defenses, or, more broadly, even the subject matter of the underlying case. *Kegerise*, 2016 WL 2736048, at *1 (quashing because information was irrelevant). This is to say nothing of the fact that DaBella brought this entire situation on itself by sending people to the Plaintiff's house months into the pendency of this litigation. And to the extent that the Plaintiff references the incident in opposing the Defendant's motion for summary judgment, the Plaintiff did not do so to establish any element of his claims or to rebut any defense, but rather to drive home the point that DaBella continued to harass him, both in person and telephonically, during the pendency of the litigation. Of course, the Plaintiff contends that only the latter is actionable. A passing reference to an incident cannot open the door to discovery from Plaintiff's lawyers when that incident is outside the claims in the litigation.

**B. The Subpoena Is a Fishing Expedition**

Request No. 3 confirms the Subpoena's real aim. It seeks evidence regarding an "allegation of violence or threatened violence," an allegation that appears nowhere in Plaintiff's pleadings and is not the basis of any claim. For that matter, DaBella has not asserted any affirmative defense in any way related to the subject incident. Discovery should be confined to developing facts underlying a party's defenses and not used as a "fishing expedition" for defenses which have not been pled. *DeFranco v. Miller*, No. 1:20-CV-00368-SPB, 2022 WL 973267, at *3 (W.D. Pa. Mar. 31, 2022) ("Discovery is not a fishing expedition for potential claims or defenses."); *Lopez v. Mercantile Adjustment Bureau, LLC*, No. CV 18-12490, 2019 WL 2118787, at *3 (D.N.J. May 15, 2019) (parties have no entitlement to "defenses that are not already identified in the pleadings."); *Ethypharm S.A. France v. Abbott Lab'ys*, 748 F. Supp. 2d 354, 360 (D. Del. 2010) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee note ("The rule change signals to the court that it has the authority to confine discovery to the claims and

defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.”)).

Using a subpoena to opposing counsel to pursue irrelevant information not bearing on any defense a defendant has pled is exactly the type of fishing expedition that courts, and the 2015 Rules Amendments, have attempted to prevent. The presiding judge in the underlying action has already said as much about DaBella’s subpoena practice in this very case. *Weingrad*, ECF No. 77 at 6 (holding that DaBella’s demand for seventeen months of Plaintiff’s computer use and communications was “an improper fishing expedition”). This Subpoena, directed at Plaintiff’s lawyers about an event that is not part of the claims at all, goes further still.

### C. The Subpoena Is Disproportionate to the Needs of the Case

The Subpoena is also disproportionate. Fed. R. Civ. P. 26(b)(1). It would require Plaintiff’s firm, in the middle of active litigation against DaBella, to litigate production, all to obtain material about a collateral event that the Firm does not have. Perrong Decl. ¶¶ 9, 13. That burden is entitled to “special weight” because the Firm is a non-party. *MSP Recovery Claims v. Sanofi-Aventis U.S. LLC*, No. 2:18-CV-2211(BRM)(LHG), 2023 WL 11986907, at *2 (D.N.J. Nov. 14, 2023). Against it, DaBella can offer no legitimate need. Requests that sweep in material untethered to the claims are overbroad on their face and exceed the bounds of fair discovery. *Blueprint Cap. Advisors, LLC v. New Jersey*, No. CV 25-01995 (JXN)(MAH), 2026 WL 836548, at *2 (D.N.J. Mar. 26, 2026).

## VI. REQUEST NO. 3 AND THE SUBPOENA’S INSTRUCTIONS ARE FACIALLY IMPROPER

### A. Request No. 3 Does Not Designate Documents

A subpoena must command production of “designated documents, electronically stored information, or tangible things.” Fed. R. Civ. P. 45(a)(1)(A)(iii). This is effectively the same

reasonable particularity requirement that governs party requests. *See* Fed. R. Civ. P. 34(b)(1)(A). Request No. 3 seeks "[a]ny and all non-privileged evidence regarding any allegation of violence or threatened violence." That is not a category of documents. It is a demand that the recipient identify and marshal "evidence" on a topic of DaBella's choosing.

That demand also intrudes on protected work product. When counsel selects and compiles materials bearing on an issue, the selection itself reveals counsel's mental impressions and is protected. *Sporck v. Peil*, 759 F.2d 312, 316-17 (3d Cir. 1985); *see also Cendant*, 343 F.3d at 663. Asking Plaintiff's litigation firm to decide what counts as "evidence" of an "allegation" is a request for exactly that selection. And the request presupposes an allegation of violence that Plaintiff has not made and is not filing suit for.

### B. The Instructions and Definitions Exceed What a Document Subpoena May Command

Instruction No. 1 directs the recipient "to search for *and testify about*" information. A document subpoena cannot compel testimony. *See Alltmont v. United States*, 177 F.2d 971, 977 (3d Cir. 1949). A person commanded to produce documents "need not appear in person" unless also commanded to appear for a deposition, hearing, or trial. Fed. R. Civ. P. 45(d)(2)(A). This Subpoena commands no appearance.

Moreover, Instruction No. 2 demands electronically stored information "in its original format complete with all metadata." For photographs or video taken on a mobile device, that would include precise geolocation and other device data irrelevant to any claim. Rule 45 requires production only in a form "in which it is ordinarily maintained or in a reasonably usable form," and a responding person "need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 45(e)(1)(B)-(C). A blanket metadata demand is disproportionate. Fed. R. Civ. P. 26(b)(1).

Instruction No. 1 also purports to require searches of “computers’ hard drives,” “computer servers to which you have access,” email accounts, “text messaging accounts, and all other places in which responsive electronic data may be stored.” And the definition of “you” sweeps in “any subsidiaries or affiliated enterprises” and “officers, directors and employees.” Perrong Decl. Ex. A, Schedule A. Applied to a law firm, these provisions would reach privileged litigation systems and persons who are not the subpoena recipient. They are overbroad on their face, in addition to providing no reason to disregard the corporate form, as explained above.

## CONCLUSION

For the foregoing reasons, the Court should stay any obligation to comply with the Subpoena pending decision of this Motion, hold that the Firm has no obligation to respond to the Subpoena unless and until it is served as Rule 45(b)(1) requires, and that any period under Rule 45(d)(2)(B) runs only from proper service, and quash the Subpoena in its entirety and order that the Firm need not produce the materials it describes.

Dated: October 1, 2026

Respectfully submitted,

/s/ Andrew Roman Perrong
Andrew Roman Perrong (PA Bar No. 333687)
**PERRONG LAW LLC**
1669 Edgewood Rd., Suite 218
Yardley, PA 19067
Telephone: 215-225-5529
Facsimile: 888-329-0305
a@perronglaw.com
*Counsel for Non-Party Perrong Law LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2026, I caused the foregoing Motion, Memorandum of Law, Declaration of Andrew Roman Perrong and Exhibit A, and proposed orders to be filed with the Clerk of Court using the CM/ECF system, and served copies by email on the following counsel for the parties to the underlying action:

"Eyman, Drew" <deyman@swlaw.com>, ddeo@swlaw.com, drew-eyman-6566@ecf.pacerpro.com, "jlanglois@swlaw.com" <jlanglois@swlaw.com>, pdxecf@swlaw.com, Diane Zelmer <djz@berensonllp.com>, Heather Casebolt <hcc@berensonllp.com>

As well as by postal mail upon:

Drew L. Eyman, Esq.,
601 SW 2nd Ave, Ste 2000
Portland, OR 97204

Diane J. Zelmer, Esq.,
4495 Military Trail, Ste 203
Jupiter, FL 33458

/s/ Andrew Roman Perrong
Andrew Roman Perrong